# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JACQUELINE J.,[1]

    Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[2]

    Defendant.

No. 18 C 2401

Magistrate Judge Mary Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline J. filed this action seeking reversal of the final decision of

the Commissioner of Social Security denying her application for disability insurance

benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title

XVI of the Social Security Act. The parties consented to the jurisdiction of the

United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross

motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. §

1383(c) and 405(g). For the reasons stated below, the case is remanded for further

proceedings consistent with this Opinion.

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

# I. PROCEDURAL HISTORY

On June 28, 2013, Plaintiff applied for both DIB and SSI, alleging that she became disabled on February 26, 2013 due to mital valve prolapse, Bell's palsy, back pain, hearing loss, and diabetes. (R. at 335–341, 342–46, 385). Her claims were denied initially on October 24, 2013, and upon reconsideration on November 18, 2014, after which Plaintiff requested a hearing. (*Id.* at 119–20, 183–84, 237–39, 240–41). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on September 14, 2016 (*Id.* at 44–118). The ALJ also heard testimony from Grace Gianforte, a vocational expert (VE). (*Id.* at 101–114).

The ALJ issued an unfavorable decision on February 8, 2017. (R. at 15–36). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since February 26, 2013, her alleged disability onset date. (*Id.* at 18). At step two, the ALJ found that Plaintiff's Bell's palsy, bilateral sensorineural hearing loss, diabetes mellitus, complex migraine headaches (also described as CVAs), and degenerative disc disease were severe impairments. (*Id.* at 18). The ALJ also concluded that Plaintiff's pulmonary embolism, hypertension, hyperlipidemia, peripheral neuropathy, multiple bilateral non-obstructing renal stones, gastroesophageal reflux, depression, and affective disorder were non-severe impairments. (*Id.* at 19–20). The ALJ found that her lumbar radiculopathy, neuropathy in her extremities, cardiac and respiratory impairments, Meniere's disease, obesity, left foot pain, and urinary and

fecal incontinence were non-medically determinable impairments. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 24).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except with the following limitations:

> lifting occasionally 20 pounds, frequently 10 pounds, carrying the same; sit for six hours, stand for six hours, and walk for six hours; and push/pull as much as she can lift/carry. Further, the claimant is not able to climb any ladders, ropes, and scaffolds but is able to tolerate moderate levels of noise as defined in Appendix D of Selected Characteristics of Occupations (1993 edition). The claimant should never perform telephone communications. She can avoid ordinary hazards in the workplace such as boxes on the floor and doors ajar and can do tasks that do not require depth perception, but should not be around unprotected heights or moving mechanical parts. The claimant is limited to frequent use of foot and hand controls and is able to frequently handle, finger, and feel objects, frequently climb ramps and stairs, and frequently balance. The claimant is using a cane for balance.

(R. at 26–27). Moving to step four, the ALJ determined that Plaintiff could not perform any past relevant work. (*Id.* at 34). At step five, based on Plaintiff's RFC, age, education, work experience, and the Medical-Vocational Guidelines (20 C.F.R. Park 404, Subpart P, Appendix 2), the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform, such as identification

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

clerk, food checker, and cashier. (R. at 35). Accordingly, the ALJ concluded that Plaintiff was not under a disability from her alleged disability onset date, February 26, 2013, through the date of the ALJ's decision. (*Id.* at 36).

On February 2, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to

relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's arguments that the ALJ erred in failing to properly account for Plaintiff's mental impairments.[4]

At step two, the ALJ found that Plaintiff's medically determinable mental impairments of depression and adjustment disorder were non-severe but

---

[4] Because the Court remands on this basis, it does not address Plaintiff's other arguments at this time.

nonetheless caused mild limitations in understanding, remembering or applying information; concentrating; persisting or maintaining pace, and adapting or managing oneself. (R. at 23–24).[5] Despite noting these limitations, the ALJ did not include any non-exertional limitations in the RFC assessment. (*Id.* at 26–24). Nor did the ALJ explain his rationale for not including non-exertional limitations in the RFC. Such an explanation is necessary for judicial review, as without it, the Court cannot follow the ALJ's reasoning. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (remanding when the ALJ's RFC analysis failed to account for mild mental limitations); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (same).

Although a mild limitation in an area of mental functioning does not necessarily "prevent an individual from functioning 'satisfactorily,'" *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (citation omitted), the ALJ is still required to analyze the limitations in light of Plaintiff's other impairments when determining the RFC. *See Denton v. Astrue,* 596 F.3d 419, 423 (7th Cir.2010) ( "A failure to fully consider the impact of non-severe impairments requires reversal."); *see also Villano*, 556 F.3d at 563 ("the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe"); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that

---

[5] Effective January 17, 2017, the Agency revised the medical criteria for evaluating mental disorders and changed the requirements of listing for mental impairments. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). The Agency expects that federal courts will review its "final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 & n. 1. Because the ALJ issued his decision on February 8, 2017, the Court will use these revised medical criteria in its review of the ALJ's decision.

one or more of [claimant's] impairments was "severe," the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments–including those impairments that in isolation are not severe."); 20 C.F.R. § 404.1523 (the combined impact of the impairments must be "considered throughout the disability determination process."); *Simon-Leveque v. Colvin*, 229 F.Supp. 3d 778, 787–88 (N.D. Ill January 17, 2017) (remanding when ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) (same). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning." *Muzzarelli v. Astrue,* No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005)). The ALJ did not do so here.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2[6] ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Nowhere in the ALJ's RFC assessment or corresponding explanation does the ALJ address the mild mental limitations discussed at step two. SSR 96-8p specifies that mental limitations determined at step two under the "paragraph B and C" criteria cannot stand in for an RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments...."). The ALJ acknowledged this at the end of his step two finding, stating:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the

sequential evaluation process. The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment.

But the ALJ never gave a more detailed assessment in his step four and five analysis. At the end of his step-two analysis, the ALJ simply stated: "The following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (R. at 24).

"Courts have remanded cases where an ALJ relied on language identical to that used at the end of Step 2 in this case because it fails to clarify the degree to which the RFC expresses the functional limitations found under the special technique." *Muzzarelli*, 2011 WL 5873793, at *23 ("It is unclear what the ALJ meant by saying that the RFC 'reflects' his Step 2 findings concerning [the claimant's] mild impairments."); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) (remanding when an ALJ used the same language at the end of step two, noting: "But [this language] was not enough, because the combined impact of the impairments must be considered throughout the disability determination process." (citations and internal quotation marks omitted)). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning." *Muzzarelli*, 2011 WL 5873793, at *23 (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)). Here, remand is required "because the ALJ failed to explain how his Step 2 discussion of [Plaintiff's] restrictions in [understanding, remembering or applying information;

concentration, persistence or pace; and adapting or managing oneself] are 'reflected' in the RFC itself." *Muzzarelli*, 2011 WL 5873793, at *23. Moreover, remand is required because the ALJ failed to consider the aggregate impact of Plaintiff's severe physical impairments and non-severe mental impairments. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.") (citing 20 C.F.R. § 404.1523).

In addition, the ALJ's analysis of Plaintiff's mental limitations at step two was inadequate. At step two, the ALJ found that Plaintiff had mild limitations in understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing herself. The ALJ stated that his step two findings were supported by: (1) the assessment of only mild functional limitations by the state agency consultants; and (2) the "generally benign" mental status examinations throughout the relevant treatment period. The ALJ also indicated that he did not give any weight to the Global Assessment of Functioning (GAF) scores of three psychiatrists who found that Plaintiff had more severe limitations. There are several errors in the ALJ's reasoning.

First, the ALJ improperly relied on state agency doctors who did not review the complete record. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *See Moreno v. Berryhill*, 882 F.3d 722,

728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). Here, the state agency doctors completed their determinations in October of 2013 and July of 2014. (R. at 146, 180). At the time of their evaluations, Plaintiff had attended only one visit with psychiatrist Anil Gandhi, M.D., who diagnosed Plaintiff with Adjustment Disorder in May of 2013. (*Id.* at 787–89). After the state agency consultants' review, Plaintiff was evaluated by S. Koko, M.D. in October of 2014 and by psychiatrist Richard Bongard, M.D. in May of 2016. (*Id.* at 1520–23, 2287–2297). Dr. Koko noted that Plaintiff had depressed mood, poor concentration, poor sleep, loss of appetite, social withdrawal and isolation, feelings of hopelessness or helplessness, and thoughts of suicide. (*Id.* at 1520–23). The doctor diagnosed her with major depressive disorder with anxious distress and a rule out diagnosis of posttraumatic stress disorder. (*Id.*). Dr. Bongard indicated that Plaintiff had depressed mood, auditory hallucinations, social isolation, poor concentration and forgetfulness, and nightmares regarding a past traumatic event. (*Id.* at 2287–2292). He diagnosed Plaintiff with major depressive disorder, recurrent, moderate and post-traumatic stress disorder, chronic. (*Id.* at 2291). These subsequent evaluations by examining psychiatrists "reasonably could have changed" the reviewing state agency consultants' opinions; and therefore, reliance on their assessments was improper.

Second, the ALJ erred in his reliance on "generally benign" mental status examinations throughout the relevant period. While the ALJ does not give examples of "generally benign" mental status examinations, Defendant notes that mental status examinations from physicians treating Plaintiff's physical condition were

predominately normal. (Dkt. 21 at 6, 8, *citing* R. at 862, 873–74, 910–11, 1013, 1024, 1033, 1056, 1876, 1888, 1899, 1912, 1921, 1934–35, 1946, 1953, 1963, 1985, 1996, 1999, 2078–79, 1767, 1777, 2902, 2910). The Seventh Circuit has cautioned against drawing a negative inference about a claimant's mental condition based on the lack of documentation of mental health symptoms in the records of physicians treating a claimant's physical condition. *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) ("The ALJ inexplicably drew a negative inference from the fact that doctors treating O'Connor–Spinner's *physical* ailments had not commented on her concentration, memory, or social functioning.") (emphasis in original). Further, the ALJ does not explain how mental status examinations from examining psychiatrists during the relevant time-period support only mild mental limitations. For instance, on October 2, 2014, Dr. Koko's mental status examination indicated depressed and anxious mood, suicidal ideation, thought preoccupation, and anxious and depressive cognitive distortions. (R. at 1521–23). On May 5, 2016, Dr. Bongard's mental status evaluation revealed depressed mood, constricted affect, auditory hallucinations, and an impaired ability to make reasonable decisions. (R. at 2289). "An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) *see also Denton*, 596 F.3d at 425 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability.")

Third, the ALJ impermissibly rejected all of the Global Assessment of Functioning (GAF) scores in the record without referring to other medical evidence given by the psychiatrists to support their evaluations, and without explaining how the scores were inconsistent with the record.[7] *See Knapp v. Berryhill*, 741 Fed. Appx. 324, 329 (7th Cir. 2018) ("The ALJ discounted the GAF scores saying they captured just a "snapshot" and were subjective. But the ALJ was not permitted, without referring to medical evidence or ordering additional testing, to reject [the doctor's] GAF ratings."). Plaintiff was assigned three GAF scores over the course of three years by three different psychiatrists. (R. at 788, 1523, 2291). In May of 2013, Dr. Gandhi gave her a GAF score of 60, indicating moderate symptoms or difficulties in functioning.[8] (R. at 21, 788). In October of 2014, Dr. Koko assigned Plaintiff a GAF score of 50, indicating serious symptoms or limitations in functioning.[9] (*Id.* at 1523). In May of 2016, Dr. Bongard also assigned Plaintiff a GAF score of 50. (*Id.* at 2291). The ALJ dismissed all of Plaintiff's GAF scores,

---

[7] GAF includes a scale ranging from 0-100, and it indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity … and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012). "Although another metric has replaced the GAF, the agency still considers these scores as relevant, medical-opinion evidence." *Knapp v. Berryhill*, 741 F. App'x 324, 329 (7th Cir. 2018) (*citing* See Soc. Sec. Admin., *Administrative Message* 13066 (July 22, 2013); *Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018)).

[8] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *DSM-IV* at 34.

[9] A GAF score of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *DSM-IV* at 34.

finding that they represented "a particular clinician's subjective evaluation at a single point in time." (*Id.* 21–22).

While GAF scores do not prove or disprove disability as they do not necessarily reflect a clinician's opinion of functional capacity, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), GAF scores are still considered relevant, medical-opinion evidence. *See* Soc. Sec. Admin., *Administrative Message* 13066 (July 22, 2013); *Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018). In this case, Plaintiff's GAF scores in the moderate to severe range given over the course of three years by three different psychiatrists could suggest more serious limitations than the ALJ assigned. *Yurt v. Colvin*, 758 F.3d 850, 859-60 (7th Cir. 2014) (finding that although the ALJ was not required to give any weight to individual GAF scores, "the problem here is not the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to [Plaintiff's] claim, which included GAF scores from multiple physicians suggesting a far lower level of functioning than that captured by the ALJ's hypothetical and mental RFC."). The ALJ's failure to address corroborative evidence in the doctors' evaluations or to explain how the scores were inconsistent with the record was error.

In sum, remand is required because the ALJ failed to: 1) account for Plaintiff's mental limitations in the RFC; 2) assess the combined impact of Plaintiff's non-severe mental limitations with Plaintiff's severe physical impairments in the RFC, and 3) properly explain his step two findings of mild

mental limitations. On remand, the ALJ shall reconsider Plaintiff's mental limitations at step two and incorporate Plaintiff's mental impairments into the RFC assessment used at steps four and five in accordance with SSR 96-8p.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [17] is **GRANTED**, and the Commissioner's motion for summary judgment [21] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 28, 2019

_____
MARY M. ROWLAND
United States Magistrate Judge